# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# EASTERN DIVISION

**SAKHU MAA TEM HERU,**

    **Plaintiff,**

    v.                                      Civil Action 2:18-cv-686
                                               Chief Judge Edmund A. Sargus, Jr.
                                               Magistrate Judge Jolson

**STATE OF OHIO, et al,**

    **Defendants.**

## REPORT AND RECOMMENDATION
## AND ORDER

Plaintiff Sakhu Maa Tem Heru, a *pro se* prisoner, brings this action against the State of Ohio, the Ohio Supreme Court, Judge John A. Vavra of Belmont County Common Pleas Court, Warden Gray, of Belmont Correctional Institution, the Ohio Department of Rehabilitation and Correction, The Tuscarawas County Common Pleas Court, and various unnamed state officials. (*See* Doc. 1-1). This matter is before the undersigned for consideration of Plaintiff's Motion for Leave to Proceed *in forma pauperis* (*see* Doc. 1) and the initial screen of Plaintiff's Complaint under 28 U.S.C. § 1915(e)(2).

Plaintiff's request to proceed *in forma pauperis* is **GRANTED**. All judicial officers who render services in this action shall do so as if the costs had been prepaid. 28 U.S.C. § 1915(a). However, having performed an initial screen and for the reasons that follow, it is **RECOMMENDED** that the Court **DISMISS** Plaintiff's Complaint.

**I.    LEGAL STANDARD**

Because Plaintiff is proceeding *in forma pauperis*, the Court must dismiss the Complaint, or any portion of it, that is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C.

§ 1915(e)(2). Rule 8(a)(2) of the Federal Rules of Civil Procedure requires a complaint to set forth "a short and plain statement of the claim showing that the pleader is entitled to relief." In reviewing a complaint, the Court must construe it in the plaintiff's favor, accept all well-pleaded factual allegations as true, and evaluate whether it contains "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). On the other hand, a complaint that consists of "labels and conclusions" or "a formulaic recitation of the elements of a cause of action" is insufficient. *Id.* (quoting *Twombly*, 550 U.S. at 555). Although *pro se* complaints are to be construed liberally, *Haines v. Kerner*, 404 U.S. 519, 520 (1972), "basic pleading essentials" are still required. *Wells v. Brown*, 891 F.2d 591, 594 (6th Cir. 1989).

## I.     BACKGROUND

Last year, the District Court for the Northern District of Ohio considered a similar complaint filed by Plaintiff against the State of Ohio, the Tuscarawas County Court of Common Pleas, the Tuscarawas County Commissioners, the Tuscarawas County Prosecutor's Office, and Judge Elizabeth L. Thomakos. *See Heru v. Ohio*, 2017 WL 2402461 (N.D. Ohio June 2, 2017). In that complaint, Plaintiff claimed to be "an indigenous Native American with Olemn, Ute, Cherokee, and Blackfoot ancestry, and also claimed "free Moorish" ancestry. *Id.* at *1. He also claimed that he "declared his inalienable right as an indigenous person to a status separate and distinct from the 14th Amendment corporate citizen." *Id.* The Court found Plaintiff's complaint and amended complaint to be "largely incomprehensible" and "composed almost entirely of meaningless rhetoric with random citations to various legal and non-legal sources." *Id.*

Accordingly, the court dismissed the majority of Plaintiff's claims and transferred his freedom of religion claims to this Court on the basis of venue. *Id*. at *3.

Here, Plaintiff's Complaint is likewise largely incompressible and consists primarily of disorganized rhetoric with lengthy citations to numerous sources. Although it is difficult to decipher, Plaintiff's Complaint primarily involves the following three issues: (1) his status and rights under Articles 8–9 of the Treaty of Guadalupe Hidalgo; (2) various issues related to his underlying conviction and habeas proceedings; and (3) alleged injuries committed by state officials against Plaintiff while in custody. (*See* Doc. 1-1). The undersigned addresses each issue in turn.

## II. DISCUSSION

### A. The Treaty of Guadalupe Hidalgo

The crux of Plaintiff's Complaint is premised on his sovereign citizen beliefs. Specifically, Plaintiff alleges that Defendants denied him his rights under the Treaty of Guadalupe Hidalgo. (*See* Doc. 1-1 at 3–10). The Treaty of Guadalupe Hidalgo was signed on February 2, 1848 between the United States and Mexico and brought an end to the Mexican–American War. *See U.S. ex rel. Chunie v. Ringrose*, 788 F.2d 638, 641 (9th Cir. 1986). Under the terms of the treaty, the United States acquired title to non-granted lands previously held by the Mexican Government. *See* Treaty with Guadalupe Hidalgo, Art. I et seq., 9 Stat. 922. Article VIII of the treaty granted the inhabitants of the ceded territory the right to elect to become citizens of the United States and incorporate into the Union or elect to remain in the ceded territory and retain the rights of either Mexican or United States citizens. (*Id*. at Art. VIII). Plaintiff explains that:

> On 5/27/17, the results from plaintiff's Ancestry Test, were made public on 23 and Me's website (23 and Me.com) * * * Results from Plaintiff's Ancestry test established Plaintiff's Descendancy, from the Pima Indians of Arizona, who are inhabitants of the ceded territory, in the Treaty of Guadalupe Hidalgo * * * Plaintiff discovered his Piman Ancestry, 5/25/17, then filed a Declaration Reserving his rights pursuant to Art. 8-9 of the Treaty of Guadalupe Hidalgo on 12/11/17.

3

Plaintiff reserved his right within the 1 year time period as required.

(*Id*. at 4–5).

While Plaintiff's precise claims pursuant to the treaty are unclear, Plaintiff's main argument seems to be that Defendants do not have "the legal authority to continue to detain Plaintiff." (*Id*. at 8, 10). But Plaintiff's claims regarding his ancestry do not place him beyond the jurisdiction of this Court or preclude his underlying conviction and detention. *See U.S. v. Amir*, 2010 WL 5014451 (N.D. Ohio Dec. 3, 2010) (rejecting sovereign immunity argument as frivolous and "warrant[ing] no further discussion."). *See also Payne v. Kida*, 2016 WL 491847 at *4 (E.D. Mich. Jan. 6, 2016) (noting that sovereign citizen arguments "have been recognized as frivolous and a waste of court resources.") (citations omitted). Consequently, the Court concludes that Plaintiff's sovereign citizenship claims concerning the Treaty of Guadalupe Hidalgo are frivolous.

### B. Plaintiff's Conviction and Habeas Proceedings

Plaintiff also alleges that Defendants violated Plaintiff's Fifth, Sixth, and Fourteenth Amendment rights "by the ongoing denial of Plaintiff's right not to be held to answer in punishment for a crime absent a lawful Indictment found by proper Grand Jury." (Doc. 1-1 at 9– 10). Specifically, Plaintiff alleges that that he has provided "specific instructions" regarding his "change of Status (citizenship/Domicile)" and that "the Record had to be corrected to cure defects in the Indictment by resubmission of the State's charges to the Grand Jury . . ." (*Id*. at 10). Plaintiff also takes issue with the outcome of his habeas petition, citing various alleged errors from the government's motion to dismiss his habeas petition. (*See id*. 12–13).

To the extent that Plaintiff may be attempting to challenge the lawfulness of his state court conviction, he may not do so in this civil rights case. As the United States Supreme Court made clear in *Heck v. Humphrey*, 512 U.S. 477, 480 (1994), "habeas corpus is the exclusive remedy for

a state prisoner who challenges the fact or duration of his confinement and seeks immediate or speedier release ...." Indeed, much of the Complaint alleges wrongful detention and accordingly cannot be brought in a civil rights action. (*See, e.g.*, Doc. 1-1 at 4 (alleging "unlawful confinement"); *id.* at 9 (alleging incarceration in violation of the U.S. Constitution); *id.* at 10 (alleging incarceration in violation of "Rights pursuant to Customary International law")). Further, as the Northern District of Ohio noted when dismissing much of Plaintiff's previous complaint, allegations concerning wrongful detention cannot proceed under §§ 1983 or 1985 unless and until Plaintiff's conviction has been "reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal, or have otherwise been called into question by a federal court's issuance of a writ of habeas corpus." *Lanier v. Bryant*, 332 F.3d 999, 1005–06 (6th Cir. 2003) (citing *Heck*, 512 U.S. at 480 ). Thus, challenges to the fact or duration of one's confinement, *i.e.*, challenges falling "within the traditional scope of habeas corpus," are not cognizable under either §§ 1983 or 1985. *Lanier*, 332 F.3d at 1005–06 (extending *Heck* to claims under § 1985). *See also Thomas v. Eby,* 481 F.23d 434, 438 (6th Cir. 2007). In sum, Plaintiff's claims related to his confinement are *Heck*-barred.

### C. Alleged Constitutional Injuries

While difficult to comprehend, the final pages of Plaintiff's Complaint allege various instances of retaliation and violations of his due process rights. First, Plaintiff alleges he suffered retaliation in the form of segregated confinement and conduct violation reports after attempting to change his name. (Doc 1-1 at 15, 17–19). He also alleges that his due process rights were violated "by not being able to defend himself on his own behalf" as to a number of conduct violations he received from prison officials. (*Id*. at 17).

Turning first to Plaintiff's retaliation claim, "[r]etaliation based upon a prisoner's exercise

5

of his or her constitutional rights violates the Constitution." *Flakes v. Brown*, No. 1:16-cv-418, 2016 WL 3536671, at *11 (W.D. Mich. June 29, 2016) (citing *Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc). In order to set forth a First Amendment retaliation claim, a plaintiff must establish that:

> (1) he was engaged in protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from engaging in that conduct; and (3) the adverse action was motivated, at least in part, by the protected conduct. *Id.* Moreover, a plaintiff must be able to prove that the exercise of the protected right was a substantial or motivating factor in the defendant's alleged retaliatory conduct.

*Id*. at *11 (citing *Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001)). Even assuming Plaintiff has pled the first two required elements, he has not adequately pled the third element, as he has failed to allege that his imposed punishments were motivated, at least in part, by his attempts to change his name. For example, Plaintiff alleges he was punished "in retaliation for exercising my constitutional and treaty right of election" but provides no support for his conclusory argument that his punishment was related to his efforts to change his name. (Doc. 1-1 at 19). *See Twombly*, 550 U.S. at 555.

As to Plaintiff's due process claims, it appears that Plaintiff takes issue with his inability to appeal or otherwise "defend himself" as to the numerous conduct violation reports he received. (*Id*. at 17). "As this Court has recognized, however, 'a prison inmate does not have an inherent constitutional right to an effective prison grievance procedure.'" *Pollock v. Lavender*, No. 2:11-cv-00114, 2011 WL 2148584, at *6 (S.D. Ohio May 31, 2011), *report and recommendation adopted*, No. 2:11-cv-00114, 2011 WL 2637329 (S.D. Ohio July 6, 2011) (quoting *Israfil v. Parks*, No. 2:10-cv-132, 2010 WL 4642978, at *1 (S.D. Ohio Aug. 18, 2010)). "Furthermore, Ohio Court[s] have held that the Ohio Administrative Code sections outlining prison grievance procedures do not confer a legal right on inmates." *Id.* (citing *State ex rel. Wickensimer v.*

6

*Bartleson*, No. L–09–1049, 2009 WL 5174167, at *3 (Ohio Ct. App. Dec. 28, 2009)). Accordingly, since a violation of a constitutional right is required to obtain relief under § 1983, and there is no constitutional right to an effective grievance procedure, Plaintiff has failed to state a claim to relief. *See Walker v. Michigan Dep't of Corr.*, 128 F. App'x 441, 445 (6th Cir. 2005).

    **D. Immunity**

Finally, even if Plaintiff's claims did not otherwise fail, the Defendants he has named are immune from suit.[1] For instance, Plaintiff brings suit against the State of Ohio, the Ohio Supreme Court, the Tuscarawas County Common Pleas Court, and a state court judge. (*See* Doc. 1-1 at 1). The Eleventh Amendment prohibits federal courts from entertaining suits "commenced or prosecuted against one of the United States by Citizens of another state, or by Citizens or Subjects of any Foreign State." U.S. Const. amend. XI. Plaintiff may sue the State of Ohio in federal court only if it has "consented to such a suit or its immunity has been properly abrogated by Congress. *Latham v. Office of Atty. Gen. of State of Ohio*, 395 F.3d 261, 270 (6th Cir. 2005) (citing *Seminole Tribe of Fla. v. Florida*, 517 U.S. 44, 54 (1996)). The State of Ohio has not consented to this lawsuit and thus has jurisdictional immunity.

Further, the Ohio Supreme Court and the Tuscarawas County Common Pleas Court are both considered to be "an arm of the State, and therefore entitled to sovereign immunity." *See Pucci v. Michigan Supreme Court*, 601 F. Supp. 886, 898 (E.D. Mich. 2009); *Mumford v. Basinski*, 105 F.3d 264, 269 (6th Cir. 1997). And, "[it] is well-established that judges enjoy judicial immunity from suits arising out of the performance of their judicial functions." *Brookings v. Clunk*, 389 F.3d 614, 617 (6th Cir. 2004) (citing *Pierson v. Ray*, 386 U.S. 547, 553–54 (1967) and *Mann v. Conlin*, 22 F.3d 100, 103 (6th Cir. 1994)). Because Plaintiff takes issue with Judge

---

[1] In addition to the named Defendants, Plaintiff has sued "various unnamed State Officials." (Doc. 1-1 at 1). These Defendants might also enjoy immunity, but, without more, the undersigned cannot make this determination.

Vavra's role in Plaintiff's habeas proceedings (*see* doc 1-1 at 19 (alleging that Judge John A. Vavra violated various laws by overruling Plaintiff's application for Habeas relief)), Judge Vavra is also entitled to sovereign immunity. *Clunk*, 389 F.3d at 617. Consequently, Plaintiff is precluded from bringing claims against the State of Ohio, the Ohio Supreme Court, the Tuscarawas County Common Pleas Court, and Judge Vavra.

### III. CONCLUSION

For the reasons stated, it is **RECOMMENDED** that Plaintiff's Complaint be **DISMISSED.**

### Procedure on Objections

If any party objects to this Report and Recommendation, that party may, within fourteen (14) days of the date of this Report, file and serve on all parties written objections to those specific proposed findings or recommendations to which objection is made, together with supporting authority for the objection(s). A Judge of this Court shall make a *de novo* determination of those portions of the Report or specified proposed findings or recommendations to which objection is made. Upon proper objections, a Judge of this Court may accept, reject, or modify, in whole or in part, the findings or recommendations made herein, may receive further evidence or may recommit this matter to the Magistrate Judge with instructions. 28 U.S.C. § 636(b)(1).

The parties are specifically advised that failure to object to the Report and Recommendation will result in a waiver of the right to have the District Judge review the Report and Recommendation *de novo*, and also operates as a waiver of the right to appeal the decision of the District Court adopting the Report and Recommendation. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).

IT IS SO ORDERED.

Date: August 28, 2018                              /s/ Kimberly A. Jolson
                                                   KIMBERLY A. JOLSON
                                                   UNITED STATES MAGISTRATE JUDGE